**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 06-cv-00056 ZLW-MJW

Jay Maisel,

                Plaintiff,

v.

McDougal Littell, a division of Houghton Mifflin Company,

                Defendant.

_____

**PLAINTIFF'S MEMORANDUM OPPOSING DEFENDANT'S
MOTION FOR STAY OF PROCEEDINGS**
_____

Plaintiff Jay Maisel (Maisel), through his attorneys, Maurice Harmon, Harmon & Seidman LLC, submits his Memorandum in Opposition to Defendant's Motion for Stay of Proceedings filed February 6, 2006 by defendant McDougall Littell, a division of Houghton Mifflin Company (Houghton Mifflin or McDougal Littell).

<u>FACTS</u>

On November 12, 1998 defendant sought and obtained a license from plaintiff to reproduce his photograph (a copy of which is attached as plaintiff's Exhibit 1) in 40,000 textbooks titled <u>The Language of Literature</u>, Applebee, Bermudez, Blau et. al., to be published in the year 2000. At that time plaintiff sent defendant an invoice stating the

price and terms of the license which defendant paid in full January 8, 1999.  Paragraph

twelve (12) on the back of plaintiff's invoice form contains the arbitration clause upon

which defendant bases its demand.  This paragraph provides in full:

> Any dispute regarding this invoice, including its validity, interpretation, performance, or breach shall be arbitrated in New York, NY under the rules of the American Arbitration Association and the laws of New York.  Judgment on the Arbitration Award may be entered in the highest federal or state court having jurisdiction.  Any dispute involving $1000.00 or less may be submitted, without arbitration, to any court having jurisdiction thereof.  User shall pay all arbitration and court costs, reasonable attorney fees plus legal interest on any award of judgment. p. 2, ¶ 12, Def.'s Exhibit A.

In late 2005 plaintiff, while conducting an audit of his licenses, inquired of

defendant whether it was still reproducing his image.  Defendant, without revealing its

unauthorized uses, told plaintiff that it was still using his photograph, and requested a

new license for 40,000 additional copies.  When plaintiff refused to provide a new license

until an exact accounting was made of past uses, defendant advised plaintiff in writing

that defendant had actually reproduced his image 523,900 times in The Language of

Literature between 2000 and 2005.  A short time later, Houghton Mifflin's (into which

McDougal previously merged) in-house counsel further modified its use count in a letter

to plaintiff's attorneys dated October 19, 2005, when she stated that the number of copies

of plaintiff's photograph either made, or to be made, was closer to 1.4 million.  None of

the uses beyond the license parameters granted in 1998 were made with plaintiff's

permission, knowledge or authority.

On January 3, 2006 following plaintiff's refusal to sign a pre-settlement

confidentiality agreement defendant, unilaterally and without prior notice to plaintiff,

filed a Demand for Arbitration with the American Arbitration Association. In the demand, defendant mischaracterized plaintiff's claims by asserting that "Respondent [plaintiff] has claimed that Claimant [defendant] has breached the above License Agreement dated November 12, 1998 and has therefore infringed Respondent's [plaintiff's] alleged copyright in a photograph." p. 2, Def.'s Exhibit B.

In reality, however, plaintiff has never made that claim.  Instead, plaintiff has always claimed, and continues to claim, that defendant's unauthorized, unlicensed use of his photograph gives rise to an independent copyright infringement claim based exclusively upon 17 U.S.C. § 101 et. seq.  Plaintiff's claims in copyright law are solely based upon the unlicensed use of his images after the 40,000 copies were made in the 2000 printing.

Following defendant's demand for arbitration, plaintiff timely petitioned the New York state court for a stay of arbitration.  The state court granted plaintiff's request for a temporary restraining order and scheduled a hearing on the arbitration issue for February 3, 2006.  Two days before the state court hearing, however, defendant removed the case to the U.S. Court in the Southern District of New York.  On February 6, 2006 defendant filed its motion to stay the proceedings in this case.

3

<u>ARGUMENT</u>

*<u>Introduction.</u>*

Defendant's continuing attempts to transform and reframe plaintiff's copyright infringement claims into breach of contract claims is a transparent stratagem designed to convince the court that the arbitration clause in the Invoice agreement permits defendant to deny plaintiff an opportunity to have a jury examine the facts of this case and decide damages.  Defendant is eagerly describing the trees, hoping that we are distracted from seeing the forest.  "It's a breach of contract case," defendant essentially proclaims. "Look at this contract clause on arbitration; it's so broad and all encompassing; let's parse the words and debate their meaning."

The forest, however, is the contract forest; the trees defendant describes are the arbitration trees in the contract forest.  The copyright forest is nowhere in sight. Defendant is forced to this argument because without a contract claim, there is no conceivable argument for arbitration in this case.

4

I.

UNDER THE EXPRESS TERMS OF 9 U.S.C. § 3, THIS COURT MUST BE
SATISFIED THAT PLAINTIFF'S COPYRIGHT CLAIMS ARE REFERABLE TO
ARBITRATION BEFORE IT CAN STAY THIS ACTION PURSUANT TO THE
STATUTE UPON WHICH DEFENDANT HAS BROUGHT ITS MOTION.

Defendant bases its motion upon 9 U.S.C. § 3 which provides:

If any suit or proceeding be brought in any of the courts of the United States upon
any issue referable to arbitration under an agreement in writing for such
arbitration, the court in which such suit is pending, *upon being satisfied that the
issue involved in such suit or proceeding is referable to arbitration under such an
agreement*, shall on application of one of the parties stay the trial of the action
until such arbitration has been had in accordance with the terms of the agreement,
providing the applicant for the stay is not in default in proceeding with such
arbitration. (emphasis supplied).

Plaintiff agrees that this case falls within the procedural parameters of the Federal

Arbitration Act.  Any action brought under this statute, however, requires the court rule

on arbitrability before it decides the stay request. *Manhattan Const. Co. v. Rotek, Inc.,

Defontaine-Definox Div., Berco Crawler Systems*, 905 F.Supp. 971 (N.D.Okl. 1995); see

also, *Roe v. Gray*, 165 F.Supp.2d 1164 (D.Colo. 2001) (reiterates the statutorily required

analysis but decides to stay the proceedings on other grounds not included in defendant's

Motion in this case).  It must follow that if the court decides there is no basis for

arbitration, the stay request is rendered moot and defendant's motion should be denied.

Plaintiff acknowledges that Chief Judge Babcock in *Roe*, *supra*, declined to rule

on arbitrability in granting defendant's motion to stay in a similar case based upon the

principle of comity and the "efficient use of judicial resources." *Roe*, *supra,* at 1174.

This court is urged to follow a different path, however, for three reasons: (1) defendant's

5

Motion in this case is based wholly upon 9 U.S.C. § 3 which expressly mandates a determination of arbitrability and does not involve the motion to compel issues presented in *Roe*; (2) to comport with long recognized "first-to-file" rules; see *Alltrade, Inc. v. Uniweld Prods., Inc.,* 946 F.2d 622, 625 (9th Cir. 1991) ("first-to-file" rule permits a district court to decline jurisdiction where a complaint raising the same issues against the same party has previously been filed in another federal district court);  and (3) to conserve judicial resources by rendering the earliest possible determination of arbitrability in this, the trial court, avoiding the necessity of a second hearing in the U.S. Court in the Southern District of New York regarding the identical arbitrability issue. *Roe*, *supra,* at 1174.  The doctrine of issue preclusion will obviate the need to relitigate this question in New York once it is addressed in Colorado, whether it's resolved for or against plaintiff. *Murdock v. Ute Indian Tribe of Uintah & Ouray Resv.,* 975 F.2d 683, 687 (10th Cir. 1992) (quoting *In Re Lombard,* 739 F.2d 499, 502 (10th Cir. 1984);  See also*, Midwest Mechanical Contractors, Inc. v. Commonwealth Const. Co.,* 801 F.2d 748, 751 (C.A.5 1986) ("Because both an application for a stay of litigation and a petition to compel litigation raise the question whether there is an actual agreement to arbitrate between the parties, "issue preclusion" will bar relitigation of arbitrability once it has been actually litigated and is essential to the first decision.")

6

II.

THE ARBITRATION CLAUSE UPON WHICH DEFENDANT BASES ITS CLAIM
DOES NOT SURVIVE THE EXPIRED 1998 INVOICE AGREEMENT AND CAN
THEREFORE NOT COMPEL ARBITRATION OF PLAINTIFF'S COPYRIGHT
CLAIMS EXCLUSIVELY BASED IN 17 U.S.C. 101 ET. SEQ.

It is undisputed that arbitration can only be compelled by agreement of the parties.
*United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582, 80 S.Ct.
1347, 4 L.Ed.2d 1409 (1960); *AT&T Techs., Inc. v. Communications Workers,* 475 U.S.
643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).  When arbitration is disputed the court
must decide (1) whether there is a valid agreement to arbitrate and (2) whether the
dispute between the parties falls within the scope of the agreement. *Medtronic Ave., Inc.
v, Advanced Cardiovascular Systems, Inc.,* 247 F.3d 44, 54 (3d. Cir.2001).  Ordinary
principles of contract construction require the court determine "the parties' intentions" in
this analysis. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614,
626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985).  Courts routinely reiterate the rule that
doubts about the scope of arbitration should be resolved in favor of arbitration.  *Shankle
v. B-G Maintenance Management of Colorado, Inc.,* 163 F.3d 1230 (10th Cir. 1999);
*Armijo v. Prudential Ins. Co.,* 72 F.3d 793, 796 (10th Cir. 1995).  It must be remembered,
however, that this "presumption" as it has been characterized by some courts, relates to
the *scope of the arbitration* rather than the question whether the arbitration clause applies
at all.  See *The Basketball Marketing Company, Inc. v. Urbanworks Entertainment,* 2004
WL 2590506 (E.D.Pa.) (a copy of which is attached hereto pursuant to D.C.COLO.
LCivR 7.1(d)); *Desktop Images v. Ames*, 929 F.Supp. 1339 (D.Colo. 1996).

7

*Basketball Marketing Company, supra,* addressed issues nearly identical to those presented in this case. The question there was whether the plaintiffs' intellectual property claims must be arbitrated pursuant to a broad arbitration clause in an expired license agreement. 2004 WL 2590506 at *1-2. In a detailed analysis of defendant's claims, the court carefully examined two Supreme Court cases deciding arbitrability in expired contract labor relations cases, *Nolde Brothers, Inc. v. Bakery Workers,* 430 U.S. 243, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977) and its modification by *Litton Financial Printing v. National Labor Relations Board et al.*, 501 U.S. 190, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991).

*Nolde Brothers* involved a severance pay dispute arising after the expiration of a collective bargaining contract requiring the interpretation of a contract clause for its resolution. 430 U.S. at 248. In deciding this case the Court announced a presumption in favor of postexpiration arbitration of matters *under* the contract, arising *after* the expiration of collective-bargaining agreements, which could only be 'negated expressly or by clear implication'. *Id.,* at 249. *Litton* clarified the *Nolde Brothers'* rule by limiting the presumption's application. *Litton* stated, "We agree with the approach of the Board and those courts which have interpreted *Nolde Brothers* to apply only where a dispute has its real source in the contract. The object of an arbitration clause is to implement a contract, not to transcend it." *Litton,* 501 U.S. at 205. Further the Court elaborates, "A postexpiration grievance can be said to arise under the contract only where it involves facts and occurrences that arose before expiration, where an action taken after expiration

8

infringes a right that accrued or vested under the agreement, or where, under normal principles of contract interpretations, the disputed contractual right survives expiration of the remainder of the agreement." *Id.*, at 205-06.

In its application of *Litton* to the issues in *Basketball Marketing,* the district court acknowleged "the policies in favor of permitting arbitration clauses to survive an expired collective bargaining agreement may not in all instances support permitting arbitration clauses to survive the termination of a commercial contract between parties who do not have a continuing relationship." 2004 WL 2590506 at *4.  The court, however, applied the higher *Litton* standard to the parties' agreement regarding arbitration in an intellectual property context, in part because of the invitation of the plaintiff, and as "an exhaustive mapping of the situation in which parties can be made to arbitrate pursuant to an arbitration clause in an expired contract." *Id*., at *5.  The *Basketball Marketing* court reasoned that the application of the *Litton* rule to commercial contracts is inherently limited by the logic of the Supreme Court's statement therein that "…a terminated or expired contract 'has by its own terms released all its parties from their respected contractual obligations, except obligations already fixed under the contract but as yet unsatisfied.' [citations]". 2004 WL 2590506*,* at *5.

The *Basketball Marketing* court then held that the only claim to which the arbitration clause applied under the very broad language "all disputes arising out of the relationship between the parties" was a breach of contract claim against defendants for their failure to pay royalties under the license; failure to maintain accurate books and

records; and failure to permit auditing by plaintiff. *Id.*, at \*5-6.  The court concluded that

the arbitration agreement failed to survive with respect to all remaining intellectual

property claims.  "…[T]here is no factual support that plaintiff's intellectual property

claims arose under the agreement…\* \* \* Indeed, the one specific allegation of the misuse

of plaintiffs' intellectual property occurred in May 2004, more than one year after the

expiration of the agreement." *Ibid*.

Continuing, the court states:

…the claims do not seek to vindicate rights that accrued or vested under the
agreement.  Instead, as the agreement confirms, plaintiff owned the rights to the
intellectual property before, during, and after the agreement. \* \* \* Furthermore,
defendant's limited right to distribute products bearing plaintiffs' intellectual
property ended with the expiration of the agreement.  Defendant does not argue
that the agreement still exists.  Nor does defendant argue that the contract
permitted the continued use of plaintiffs' intellectual property throughout May
2004.  Thus, defendant has not presented a link between defendant's alleged
misuse of plaintiffs' intellectual property and the rights guaranteed by the
agreement. *Id.,* at 6.

Finally, the court found that "…plaintiffs' intellectual property claims do not

involve a right that survived the termination of the agreement.  \* \* \* …the central issue

of Counts II through VIII of the complaint is whether defendant was permitted to use, and

in fact used, plaintiffs' intellectual property after the termination of the agreement.  As

previously discussed, this contractual right to use plaintiffs' intellectual property to

distribute certain products terminated with the agreement." *Ibid*.

In support of this analysis are the courts that hold a licensee becomes a "stranger"

to the licensor under copyright law when it exceeds its license for use.  The seminal case

that sets forth these principles is *Marshall v. New Kids on the Block*, 780 F.Supp. 1005 at 1009 (S.D.N.Y. 1991).  *New Kids* states:

> Case law in this Circuit indicates that a copyright licensee can make himself a "stranger" to the licensor by using the copyrighted material in a manner that exceeds either the duration or the scope of the license. For example, in *Kamakazi Music Corp.*, supra, plaintiff had licensed defendant to print sheet music of copyrighted songs owned by the plaintiff. When the defendant continued to exploit the copyrighted work after the termination of the license agreement, plaintiff sued for copyright infringement. The court held that once the contract had expired, the defendant had no greater right to use the copyrighted works than any other person, and the plaintiff had stated a claim for infringement arising under the copyright laws. *Id.*, at 230.

In *Kanakos v. MX Trading Corp.*, 216 U.S.P.Q. 1030, 1981 WL 1377 (S.D.N.Y. 1981) (a copy of which is attached hereto pursuant to D.C.COLO. LCivR 7.1(d)), the court held, "Where a licensee utilizes a copyrighted work in a manner or to an extent not authorized by the license agreement, the licensee's position is no different from that of an infringer having no contractual relationship with the holder of the copyright.  In both cases, the resulting cause of action is one for copyright infringement, and the claims against both arise under the copyright statutes." 1981 WL at 1377 *2.  Nimmer confirms the rule ""…when a license is limited in scope, exploitation of the copyrighted work outside the specified limits constitutes infringement."

In the instant case, once defendant McDougal exceeded its authorized printing of 40,000 copies of plaintiff's image, it assumed the legal status of a 'stranger' identical to one who takes the copyrights of others never having obtained a license in the first place. Here, defendant's status changed as soon as it exceeded the clear and undisputed limits of plaintiff's license.  At that moment defendant became a copyright infringer, identical to

11

one who pirates wholesale the work of a copyright holder, never having had a contractual

relationship with him in the first place.  And its previous contractual license relationship

with plaintiff does not save it from the conversion. *New Kids, supra*; *Kanakos, supra*;

*accord*, 3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 10.15[A], at 10-116 to 10-

118 (2005).  If there is no contractual relationship between the parties, *per se*, defendant's

claims for arbitration fail because they cannot meet the *Litton* requirement that the

dispute "arise under the contract."  Strangers can never be compelled to arbitrate claims

against strangers.

Following a somewhat different path of analysis from that taken in *Basketball*

*Marketing*, *supra*, Senior District Judge Kane ended up at the same place in *Desktop*

*Images v. Ames et al.*, 929 F.Supp. 1339 (D.Colo. 1996).  Judge Kane was presented a

case in which plaintiff alleged copyright infringements and defendant contended the

following contract clause compelled arbitration.  The court wrote:

> In the subject case, the Agreement states: 'The parties agree that any disputes or
> questions arising thereunder including the construction or application of the
> Agreement shall be settled by arbitration' (Compl., Ex. 2 § 16.) This is somewhat
> narrower than the arbitration clause in *Kamakazi* providing that "any controversy
> or claim arising out of, *or relating to* this agreement or the subject matter thereof
> or the breach thereof shall be settled by arbitration." *Kamakazi,* 684 F.2d at 229
> (emphasis added).  Here, the parties only agreed to arbitrate issues arising under
> the Agreement.
>
> A reasonable interpretation of the Agreement is that it does not contemplate
> arbitration of a copyright infringement action because, such action does not arise
> under the agreement.  If there is no agreement to arbitrate such infringement,
> there is no basis to send the suit to arbitration. *See* Nimmer, *supra,* § 10.15[B] n.
> 39.
>
> As stated in a case cited by both parties, "[t]he question to be asked is not when
> did the acts complained about occur, but rather where do the rights and
> obligations which control the resolution of the dispute arise." *Merrill, Lynch,* 574

12

F.Supp. at 1475. The rights and obligations controlling the resolution of the issues raised in the complaint arise chiefly under the Copyright Act.

This case, rather than concerning a contract dispute, i.e. the failure of Silicon/Aames to comply with the terms of the Agreement, focuses on the violation of the copyright owner's property rights arising under the act. As such, Desktop properly seeks its remedies under the Copyright Act. *See Edwards & Co. v. SNE Enterprises, Inc.,* 1995 WL 688707 at *2-3 (N.D.Ill. Nov. 13, 1995).

I conclude the Agreement does not reflect the parties' intention to arbitrate copyright or trademarks violations, even though these may relate to the Agreement. Therefore § 3 of the Federal Arbitration Act mandating a district court to stay proceedings and compel arbitration does not apply because Desktop and Silicon/Aames did not agree in writing to arbitrate the issues underlying this proceeding. 929 F.Supp. at 1345.

In our case, defendant must convince this court that the arbitration clause survived the end of the agreement and applies to this dispute. It does neither. First, defendant has proffered no evidence to indicate the parties intended the reach of this agreement extend beyond its expiration regarding any matter. Here, all of the rights and duties promised and conveyed in the 1998 invoice agreement have been long ago satisfied. Plaintiff provided a license and defendant paid the agreed price for the license. Their contractual relationship ended either when plaintiff was paid on January 8, 1999—the last remaining duty under the agreement—or, at the latest, when defendant printed the 40,000th copy of plaintiff's photograph in the year 2000 printing. As *Litton* reminds us "…an expired contract has by its own terms released all its parties from their respective contractual obligations, except obligations already fixed under the contract but as yet unsatisfied." 501 U.S. at 206. *New Kids on the Block* tells us that there can be no contractual basis for defendant to assert its arbitration claim because its copyright infringements made it a 'stranger' to plaintiff.

13

Second, even if the arbitration clause somehow survived the contract term, there is nothing that would indicate either party intended the invoice terms apply to independently based copyright infringements committed after the term of the license had expired. When plaintiff licensed his image to defendant he certainly did not anticipate that defendant would infringe his copyrights by purchasing rights to 40,000 copies but later make an additional 1.36 million copies without negotiating a new license.

The use of plaintiff's image was expressly limited in the 1998 agreement.  All other rights concerning his photograph were strictly reserved to plaintiff.  The agreement states in relevant part:

> Non-exclusive reproduction rights only to the Copyright 1971 Jay Maisel photograph "Mosque rays" (SS101A) for use by McDougal Littell in the high school textbook "The Language of Literature" by Arthur N. Applebee, Judith Langer, et al.  The image will appear as a full page in color.  The print run is limited to 40,000 copies.  It will be piblished [sic] in the year 2000.
>
> Any additional usage must be negotiated separately.
> PLEASE SEE THE BACK OF THIS PAGE FOR FURTHER CONDITIONS.

p.1, Def.'s Exhibit A.

On the back of the agreement in relevant part is the following:

> All photographs are Copyrighted 1996 Jay Maisel.  All photographs published must carry this notice properly affixed to the Image.  All rights are reserved by Jay Maisel.  This is a limited assignment of Copyright by Jay Maisel, this invoice permits one-time publication only for the use, duration and insertions as specified on the form.  Any use other than that specified on the front of this Invoice must be negotiated and a purchase order issued. *Id.*, at p. 2.

The agreement could not be clearer in its limitation of uses conveyed.  Prior to its Demand for Arbitration, defendant never contested any part of the Invoice agreement, including its licensing provisions. See (September 15, 2005 and October 19, 2005 letters

14

from defendant to plaintiff, attached as Plf.'s Exhibit 2 and Plf.'s Exhibit 3 respectively).

Defendant initially only disputed the amount of damages.  When McDougal ceased to

further negotiate damages, it apparently decided to change the plaintiff's copyright

infringement claims to breach of contract claims.  Then defendant began its effort to

ascribe this "new dispute' to plaintiff as if plaintiff had originated this inaccurate

description of his claims.  Thereafter, defendant never passed-up an opportunity to

describe plaintiff's claims as breach of contract claims.

Beginning with its Demand for Arbitration defendant states, "Respondent

[plaintiff] has claimed that Claimant [defendant] has breached the above License

Agreement dated November 12, 1998 and has therefore infringed Respondent's

[plaintiff's] alleged copyright in a photograph." p. 2, "Rider" Def.'s Exhibit B.

Defendant asserts in its Notice of Removal filed in the S.D.N.Y. "…plaintiff…claimed

that Defendant exceeded the terms of a license….". p. 1, Def.'s Exhibit F.  Defendant

continues this drumbeat in its Motion before this court when it states in the first

paragraph "…[plaintiff]…claimed that Defendant's alleged breach exceeded $250,00[1]

---

[1] Similarly, defendant in what apparently is designed to appeal to the emotion of the judiciary, loses no opportunity to decry, as if relevant to these proceedings, plaintiff's pre-litigation demand of $250,000 for 'breach of license' obtained for only $600 in 1998. Otherwise, why is plaintiff's opening settlement offer prominently stated in defendant's initiating documents in this court and the S.D.N.Y. filing?  In neither case is it appropriate to essentially "plead" plaintiff's settlement offer nor relevant to any claim therein.

While once more trying to transform this dispute from a copyright claim into a breach of contract dispute by merely saying so, defendant includes this settlement communication to apparently demonstrate to this court the 'unreasonable demands' of plaintiff for compensation in hopes of disparaging plaintiff. In neither pleading, however, does defendant ever provide the context of plaintiff's claim, which is fully set forth in his

(the "dispute"). ¶ 1, page 2, Def.'s Mot. for Stay.  "Alleged breach" followed by

"dispute" is another try at the simple notion that plaintiff and this court would dutifully

trudge down the contract path towards arbitration merely because defendant repeatedly

misrepresents plaintiff's claims.

Given the course defendant has deliberately embarked upon, plaintiff invites

defendant to state exactly which provision in the contract plaintiff is allegedly disputing.

Since defendant from the beginning of litigation has proclaimed that plaintiff disputes the

contract, it seems only proper that defendant take the next step and tell the plaintiff, and

more importantly, this court, which provision of the contract plaintiff is disputing.

Defendant will be unable to do so because plaintiff has only asserted copyright

infringement claims from the outset, as clearly set forth in plaintiff's letters dated

---

detailed letters to defendant, dated September 16, 2005 (Plf.'s Exhibit 4) and his letter of November 18, 2005, attached as Plf.'s Exhibit 5 respectively.  In his demand letter, plaintiff states his claim for the statutory damages limit of $150,000 for willful copyright infringement, plus appropriate attorney's fees under § 505, of $10,000 as well as interest for five (5) years compounded annually at the statutory rate for prejudgment interest under New York law (a statutory rate previously offered by defendant).

Thus, plaintiff's opening settlement offer of $261,565 for a claim against a publishing company, whose very business is largely comprised of licensing and selling intellectual property, is reasonable for the infringements alleged, especially in a case where it is essentially undisputed that defendant illegally used plaintiff's image some 1.36 million times.  Moreover, it represents a rational assessment of defendant's potential damage risks under plaintiff's alternate claims for actual damages and profits of the infringer, allowed pursuant to 17 U.S.C.§ 504(b).  The infringing book in question is a title that sells at retail for $88.52 per copy (www.amazon.com, Feb. 25, 2006).  In this case, clear proof of revenues causally related to the infringing work is easily established (gross sales revenues of *The Language of Literature, level 9*) yielding potentially substantial damages, likely in excess of those initially requested, pursuant to the alternate § 504(b) remedies option "actual damages…and any profits of the infringer attributable ot the infringement".

September 16, 2005 and November 18, 2005 to defendant's in-house counsel. (attached as Plf.'s Exhibits 4 & 5 respectively).

It appears from the beginning that defendant's disingenuous mischaracterization of plaintiff's copyright claims was purely designed to support an arbitration claim. It seems to state the obvious to say that defendant cannot artificially create a contract dispute, ascribe it to plaintiff, and then bootstrap its way to arbitration of plaintiff's copyright claims describing them as a contract dispute. Defendant sees the arbitration path, with its limited discovery; high filing costs; substantial arbitrator's fees; absence of regularly recorded proceedings; and virtually unappealable awards, as its best hope of minimizing responsibility for its extensive, repeated and willful copyright infringements of Jay Maisel's photograph.

III.

EVEN IF THE ARBITRATION CLAUSE SURVIVED THE EXPIRED AGREEMENT ITS SCOPE DOES NOT INCLUDE COPYRIGHT INFRINGEMENT CLAIMS.

For the reasons set forth above, plaintiff contends this analysis is unnecessary. Plaintiff, however, left to speculate (given the paucity of legal citations, analysis and argument in defendant's Motion) as to the specific arguments defendant will make in its reply memorandum, provides the following argument.

The scope of the arbitration clause in our case is limited.  It states, "Any dispute regarding this invoice, including its validity, interpretation, performance, or breach shall be arbitrated in New York, NY under the rules of the American Arbitration Association and the laws of New York." p. 2, ¶ 12, Def.'s Exhibit A.  The operative phrase "any dispute regarding this invoice" contrasts with the substantially broader phrases in *Basketball Marketing* ("any dispute between the [parties] whether arising in fact or in law and including all contractual and tort claims arising under both state and/or federal law") 2004 WL 2590506 p. 2;  *Desktop Images* ("any disputes or questions arising thereunder including the construction or application of the Agreement") 929 F.Supp. at 1342;  and *Litton* ("all '[d]ifferences that may arise between the parties' regarding the Agreement…or 'the construction to be placed on any clause or clauses of the Agreement'") 501 U.S. at 205.

"Any dispute" while broad in isolation, is narrowed by "regarding this invoice". Hornbook contract law dictates that unless the court is convinced that "one of the parties

18

used and understood ordinary words in a different sense and the other party has reason to know it the "plain, ordinary, and popular" meaning of the words control in contract interpretation.  1 A. Corbin, *Contracts* § 542 (1952).  The plain, ordinary, and popular meaning of the phrase "regarding this invoice" should prevail since defendant will be unable to show the parties intended any other meaning.  A dispute "regarding this invoice" under its plain meaning does not include copyright infringement disputes. Defendant will likely argue, however, that the "Invoice" includes the license plaintiff granted it under the 1998 transaction and plaintiff's dispute is for "breach of contract" i.e., breach of the license.  The fallacy of this claim is set forth previously in Section II of this memorandum, and again disposes of this argument.

There is no dispute between the parties regarding the invoice agreement in general, or its license terms in particular.  They are clear on their face.  For example, is defendant alleging, "The print run is limited to 40,000 copies." (p.1, Def.'s Exhibit A) is unclear or actually means it could use the image 1.4 million times without contacting plaintiff and negotiating a new license?  Is defendant contending that the language on the face of the invoice, "Any additional usage must be negotiated separately" (p. 1, *Id.*) is unclear or actually means it could copy and publish plaintiff's image an additional 1.36 million times without new license?  Is defendant McDougal arguing that, "Any use other than that specified on the front of this Invoice must be negotiated and a purchase order issued." (p. 2, *Id.*) is unclear and could in fact permit defendant to print and print and reprint plaintiff's copyrighted work for hundreds of thousands more times than permitted by this agreement?

19

Defendant has no claim under the invoice agreement.  It received exactly what it bargained for.  Plaintiff makes no claim under the invoice.  He brings his copyright infringement claims by authority of United States copyright law as embodied in 17 U.S.C. 101 et seq.  It is clear that no dispute exists here regarding the invoice agreement. It is only a legal fiction invented by defendant to contend otherwise.

CONCLUSION

Plaintiff's copyright claims, which are completely outside the Invoice agreement in both time and scope, should not be arbitrated.  The agreement to arbitrate expired long ago.  Moreover, even if the arbitration agreement were in effect, it would not encompass copyright infringement claims.  They are outside its scope.  Defendant's misconduct by continuing to use plaintiff's image long after its license expired in no manner creates a "dispute under the contract or related to the contract".  When defendant took the turn in the road and began its long and extensive infringements of plaintiff's work, it became as a stranger to plaintiff—a copyright infringer—independently liable for its misdeeds under U.S. copyright law.

Plaintiff recognizes and appreciates this court's inherent power to stay these proceedings.  Based upon the law and arguments stated above, however, Jay Maisel respectfully requests this court accord him the timely prosecution of his copyright infringement claims in this, his chosen forum, before a judge and jury.

**WHEREFORE**, plaintiff requests the court deny defendant's Motion for Stay of

Proceedings and permit plaintiff to promptly prosecute his claims against defendant.


February 26, 2006.

Plaintiff Jay Maisel by his attorneys,
Harmon & Seidman LLC


s/MauriceHarmon
Maurice Harmon
Attorney for Plaintiff
The Pennsville School
533 Walnut Drive
Northampton, PA  18067
Telephone 610-262-9288
Fax 610-262-9288
maurice@mauriceharmon.com


CERTIFICATE OF SERVICE (CM/ECF)

I hereby certify that on February 26, 2006, I caused the foregoing
MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR STAY OF
PROCEEDINGS, to be electronically filed with the Clerk of the Court using the CM/ECF
system which will send notification of such filing to the following email addresses:

Trautman.Tucker@dorsey.com  [Tucker K. Trautman]


s/MauriceHarmon
Maurice Harmon
Attorney for Plaintiff
The Pennsville School
533 Walnut Drive
Northampton, PA  18067
Telephone 610-262-9288
Fax 610-262-9288
maurice@mauriceharmon.com


21