**Westlaw Attached Printing Summary Report for HARMON,MAURICE 5585001**

| | |
|---|---|
| Date/Time of Request: | Sunday, February 26, 2006 21:47:00 Eastern |
| Client Identifier: | 12 |
| Database: | DCT |
| Citation Text: | Not Reported in F.Supp.2d |
| Lines: | 519 |
| Documents: | 1 |
| Images: | 0 |

The material accompanying this summary is subject to copyright. Usage is governed by contract with Thomson, West and their affiliates.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 2590506 (E.D.Pa.)
**(Cite as: Not Reported in F.Supp.2d)**

Briefs and Other Related Documents

Only the Westlaw citation is currently available.

United States District Court,E.D. Pennsylvania.

THE BASKETBALL MARKETING COMPANY, INC., d/b/a and 1, et al., Plaintiffs,

v.

URBANWORKS ENTERTAINMENT, Defendant.

**No. Civ.A. 04-CV-3179.**

Nov. 10, 2004.

*MEMORANDUM OPINION*

DAVIS, J.

**\*1** This case involves a contractual and intellectual property dispute between defendant Urbanworks Entertainment ("Urbanworks") and plaintiffs The Basketball Marketing Company, Inc. (d/b/a "And 1") and BMC Players, Inc. (collectively referred to as "plaintiffs"). Jurisdiction is appropriate pursuant to 28 U.S.C. § 1332. This Court also possesses jurisdiction over the federal statutory claims pursuant to 28 U.S.C. §§ 1331 and 1338(a). Presently before the Court are Defendant's Motion to Dismiss and Compel Arbitration (Doc. No. 4), filed on September 20, 2004; Plaintiffs' Response to Defendant's Motion to Dismiss and Compel Arbitration (Doc. No. 8), filed on October 4, 2004; and Defendant's Reply Memorandum of Law in Support of its Motion to Dismiss and Compel Arbitration (Doc. No. 12), filed on October 25, 2004.

For the following reasons, the defendant's motion to dismiss the complaint is DENIED. Defendant's motion to compel arbitration is GRANTED as to Count I of the complaint and DENIED as to Counts II through VIII of the complaint.

I. Factual and Procedural History

Plaintiffs are engaged in the business of manufacturing, distributing, and selling basketball related services and

merchandise, such as footwear, apparel, DVDs, and videos of basketball events. (Compl. at ¶ 8). These products bear And 1's name, likeness, logos, service marks, designs, trademarks, and copyrighted art work ("intellectual property"). (*Id.*). Particularly successful products are DVDs and videotapes containing footage of plaintiffs' And 1 Mix Tape Tour. (*Id.* at ¶ 12). The And 1 Mix Tape Tour consists of a traveling exhibition basketball game with skilled basketball players that takes place in various cities throughout the country. (*Id.* at ¶¶ 12-20). Plaintiffs have registered variations of the trademarks AND 1 and MIX TAPE. (*Id.* at ¶ 11).

On March 1, 2002, plaintiff And 1 entered into a Marketing & Manufacturing, Distribution Agreement (the "agreement") with defendant. (*Id.* at ¶ 23). <u>FN1</u> Pursuant to the agreement, defendant marketed, manufactured, and distributed copies of the And 1 Mix Tape Tour and other products bearing And 1's intellectual property. (*Id.* at ¶ 25; *see* Agreement, attached as Exhibit B to the Complaint). In exchange, And 1 received the net proceeds of the sale of the merchandise, minus certain manufacturing and packing costs, marketing costs, administrative fees, and a distribution fee. (*Id.* at ¶ 27). The duration of the agreement was for 18 months, followed by an automatic one-year extension unless one of the parties gave notice of termination at least 90 days prior to the end of the current term. (*Id.* at ¶ 26; *see* Agreement, at ¶ 3.1).

> <u>FN1.</u> This Court notes that only plaintiff And 1 and defendant Urbanworks entered into the agreement. (*See* Agreement).

In order to market, promote, and distribute products bearing And 1's intellectual property, the agreement provided defendant with a limited, non-exclusive right and license to use And 1's "trade names, trademarks, service marks, and the names and likenesses of all featured athletes and performer" (the "intellectual property"), but only in connection with the sale of videos and DVDs covering the And 1 Mix Tape Tour. (*Id.* at ¶ 31; *see* Agreement, at ¶ 10.2). The agreement reserved And 1's rights, title, and interest in this intellectual property; and required that defendant receive And 1's approval prior to its use in connection with the packaging, advertising, or marketing of products. (*Id.* at ¶ 31; *see* Agreement, at ¶ 10.2). To ensure the accurate and efficient payment, the agreement required defendant to keep all books and records of all transactions related to the agreement during the term of the agreement and for two years thereafter (the "audit period"). (*See* Agreement, at ¶ 7). The agreement granted And 1 access to these audit records during the audit period. (*Id.*).

**\*2** The agreement between And 1 and defendant also contained an arbitration provision. The arbitration clause is found in Section 12 of the agreement; and reads as follows:
12.1 This Agreement shall be governed by the laws of the State of California.
Arbitration: In the event of any dispute between Company and Urban Works Distribution, Inc., whether arising in fact or in law and including all contractual and tort claims arising under both state and/or federal law (hereinafter "Dispute"), the parties agree to submit such Dispute to binding arbitration pursuant to <u>California Code of Civil Procedure Section 1280</u>, et seq.... Any such proceedings shall be situated in or near Los Angeles County, California, and shall be conducted in accordance with the laws of the State of California....

(*See* Agreement, at ¶ 12.1).

In January 2003, And 1 made an inquiry to defendant concerning discrepancies in defendant's reporting of sales and amounts owed. (Compl. at ¶ 35). And 1 allegedly met with resistence to its request. (*Id.* at ¶ 36). By letter, dated May 29, 2003, And 1 informed defendant that it did not desire to extend the agreement beyond the initial 18-month term. (*Id.* at ¶ 37; *see* May 29, 2003 termination letter, attached as Exhibit C to Pl. Rsp. to Def. Mot. to Dismiss and Compel Arbitration). Plaintiffs allege that, subsequent to the expiration of the agreement in September 2003, defendants failed both to provide complete and accurate figures regarding revenue information and to justify the various reporting discrepancies. (*Id.* at ¶¶ 34-36).

After the expiration of the agreement, plaintiffs contend that the defendant continued without permission to promote, market, and sell a basketball DVD and other merhandise that utilized plaintiffs' MIX TAPE trademarks. (*Id.* at ¶ 42).

Plaintiffs specifically allege that in Volume 2 of Streetball magazine, released for sale in May 2004, defendant placed a full-page advertisement that offered to sell basketball DVDs using plaintiffs' MIX TAPE trademarks. (*Id.* at ¶ 43).

On July 2, 2004, plaintiffs filed a complaint against defendant. (Doc. No. 1). Count I of the complaint alleges that defendant breached the agreement by failing, *inter alia,* to pay all sums due under the agreement, to provide an audit or accounting as required by the agreement, and to abide by the covenant of good faith and fair dealing. (Compl. at ¶¶ 49-58). Counts II-VIII of the complaint assert claims concerning defendant's alleged use of plaintiffs' intellectual property after the termination of the agreement; these claims include trademark infringement pursuant to 15 U.S.C. §§ 1125(a) and 1114 (Count II-III); unfair competition and trade practices (Count IV); trademark dilution pursuant to 15 U.S.C. § 1125(c) (Count V); false advertising pursuant to 15 U.S.C. § 1125(a) (Count VI); unjust enrichment (Count VII); and conversion (Count VIII) (collectively referred to as the "intellectual property claims").

**\*3** Defendant filed a motion to dismiss and compel arbitration on all counts of the complaint on September 20, 2003. (Doc. No. 4). Plaintiffs filed a response on October 4, 2004 (Doc. No. 8), and, on October 25, 2004, defendant filed a reply brief in support of its motion to dismiss and compel arbitration on all counts of the complaint (Doc. No. 12).

## II. Discussion

Defendant moves this Court to dismiss the complaint and compel arbitration of all claims. (Def. Mot. To Dismiss, at 1). Defendant argues that the broad arbitration clause survived the expiration of the agreement and applies to all counts of the complaint. (*Id.* at 8). Plaintiffs agree that the breach of contract claim (Count I) is subject to arbitration. (Pl. Rsp. To Def. Mot. To Dismiss, at 4; *see* August 11, 2004 letter to defendant's counsel, attached as Exhibit A to Pl. Rsp. to Def. Mot. to Dismiss). However, plaintiffs oppose arbitration of the intellectual property claims (Counts II-VIII) on the ground that the alleged misconduct forming the predicate for these counts arose after the expiration of the agreement on August 1, 2003. Plaintiffs further maintain that they would waive arbitration of Count I of the complaint, if the Court finds that the intellectual property claims are not subject to arbitration.

### A. Legal Standard

Motions to compel arbitration are evaluated under the summary judgment standard set forth in Federal Rule of Civil Procedure 56. *See, e.g., Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd., 636 F.2d 51, 54 n. 9 (3d Cir.1980); Berkery v. Cross Country Bank, 256 F.Supp.2d 359, 364 (E.D.Pa.2003)*. This standard places the burden on the moving party to demonstrate "that there is no genuine issue as to any material fact" and that it "is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Court must view the facts and construe all reasonable inferences in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)*.

Both parties agree that the agreement falls within the purview of the Federal Arbitration Act ("FAA"). The FAA provides that "a written provision in any ... contract involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable...." 9 U.S.C. § 2 (West 2004). A Court must issue an order compelling arbitration if there has been "failure, neglect, of refusal" to comply with the arbitration agreement. *Id.* § 4. Upon application of one of the litigants, a court must stay the "trial of the action" if it finds that a particular "issue" is arbitrable under a written agreement. *Id.* § 3; *see Miron v.. BDO Seidman, LLP, 2004 WL 2418008, at \*8 (E.D.Pa. Oct.20, 2004)* (reading FAA's requirement that court stay the "trial of the action" commands that proceedings must be stayed in their entirety upon motion, even when action encompasses both arbitrable and non-arbitrable claims). Even if all the claims involved in an action are arbitrable, however, a court must stay the trial of the action upon motion, rather than dismissing the case in its entirety. *Id.; see also Lloyd v. Hovensa, LLC, 369 F.3d 263, 268-269 (3d Cir.2004)* (district court has no discretion to deny motion for stay pending arbitration pursuant to FAA and dismiss complaint where it finds all claims to be arbitrable). [FN2]

FN2. Under the Third Circuit's interpretation of § 3 of the FAA, defendant would not be permitted to dismiss the action in its entirety if plaintiff sought a stay of the proceedings. However, neither party has requested this Court to stay the proceedings pending the resolution of arbitrable claims. Thus, to the extent that all claims are arbitrable and to the extent that neither party requests a stay within the meaning of § 3 of the FAA, dismissal of all claims would be an appropriate remedy. For the reasons stated in this opinion, however, dismissal of all claims is inappropriate in this situation.

**\*4** In determining whether a matter is arbitrable, courts are bound by the principle that arbitration is a creature of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to submit. *See United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)*. A court must submit a matter to arbitration when (1) there is a valid agreement to arbitrate and (2) the specific dispute falls within the substantive scope of the agreement. *Medtronic Ave., Inc. v. Advanced Cardiovascular Systems, Inc., 247 F.3d 44, 54 (3d Cir.2001)*. In determining whether a matter is arbitrable, "the parties' intentions control." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985)*. Furthermore, although doubts about the scope of an arbitration agreement must be resolved in favor of arbitration, [FN3] the validity of an arbitration agreement and the issues that must be arbitrated are matters to be determined by the court. *Medtronic Ave, Inc., 247 F.3d at 55*. A party cannot be forced to "arbitrate the arbitrability question." *AT & T Technologies, Inc. v. Communications Workers, 475 U.S. 643, 651, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)*.

FN3. As will be discussed, the presumption in favor of arbitrability does not apply "wholesale" in the context of expired agreements. *See Litton Fin. Printing Div., Inc. v. NLRB, 501 U.S. 190, 205, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991)* (refusing to apply presumption wholesale in context of expired bargaining agreement).

1. The arbitration clause in the terminated agreement is valid for certain purposes, but not others.

An arbitration clause does not generally continue in effect after a contract expires. *See Durham Life Ins. Co. v. Evans, 166 F.3d 139, 159 n. 15 (3d Cir.1999)*. It is well settled, however, that structural provisions relating to remedies and dispute resolution, such as an arbitration clause, may in limited instances survive the expiration of a contract. *Litton Fin. Printing Div. v. NLRB, 501 U.S. 190, 208, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991)*. In *Litton,* the Supreme Court addressed when grievances that arise after the termination of a collective bargaining agreement are subject to an arbitration clause within the expired agreement. *Id.* at 205. The Court clarified its previous decision in *Nolde Brothers, Inc. v. Bakery & Confectionary Workers Union* [FN4] and held that only post-termination grievances "arising under the contract" are subject to arbitration. *Id.* A post-termination dispute arises under the contract (I) when it involves facts and occurrences that arose before expiration; (ii) where an action taken after expiration infringes a right that occurred or vested under the agreement; or (iii) where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement. *Id. at 205-206.* The *Litton* standard requires a nexus between the post-termination conduct and the content of the collective bargaining agreement in which the arbitration clause is embedded. The rationale behind this standard resolves competing equities. It recognizes that parties do not "intend a pivotal dispute resolution provision to terminate for all purposes upon *the* expiration of the agreement." *Id.* at 208. On the other hand, it recognizes that an "expired contract has by its own terms released all its parties from their respective contractual obligations, except obligations already fixed under the contract but as yet unsatisfied." *Id.* at 206. After all, "the object of an arbitration clause is to implement a contract, not to transcend it." *Id.* at 205. This Court recognizes the limitations in applying the *Litton* standard, which involved a collectively bargained labor agreement, to commercial contracts between sophisticated parties. Unlike a general commercial contract, parties to a collective bargaining agreement are presumed to enjoy an ongoing relationship. *See Luden's Inv. v. Local Union No. 6 of the Bakery, 28 F.3d 347, 356 (3d Cir.1994)* (emphasizing that collective bargaining agreements in labor setting involve a continuing relationship). This means that the motive for terminating a collective bargaining agreement is often times not to end the relationship and all contractual provisions between the two parties, but, instead, to tweak a few of the provisions within the collective bargaining agreement. *See id.* at 356 (termination of collective bargaining agreement does not signal an intent to abandon arbitration because termination will "often be to change just a few of its terms"). Thus, while the termination of a collective bargaining agreement does not necessarily evince a party's intent to terminate the arbitration clause, the termination of a general contract among commercial entities may very well signify such intent.

Furthermore, without a continuing relationship, parties to a general commercial contract may desire the more adversarial and protracted nature of judicial proceedings before a court of law, rather than the "prompt and inexpensive resolution of their disputes by an expert tribunal." *Nolde Brothers, Inc.,* 430 U.S. at 254; *see also Day v. Graphic Arts Assoc. Of Delaware Valley,* 1992 WL 6470, at *5 (E.D.Pa. Jan.13, 1992) ("national policy of the peaceful resolution of labor disputes" applicable when relationship underlying contract remains intact). Consequently, the policies in favor of permitting arbitration clauses to survive an expired collective bargaining agreement may not in all instances support permitting arbitration clauses to survive the termination of a commercial contract between parties who do not have a continuing relationship.

> FN4. *Nolde Brothers* held that a severance pay dispute arising under the terms of an expired collective bargaining agreement, although based on events that occurred after the expiration of the agreement, was still arbitrable pursuant to the agreement's arbitration clause. 430 U.S. 243, 255, 97 S.Ct. 1067, 51 L.Ed.2d 300 (1977). However, prior to the Court's clarification in *Litton,* language within *Nolde Brothers* suggested a broader application of its holding and of the methodology for determining when a post-contractual dispute is arbitrable pursuant to an arbitration clause in an expired agreement. *Id.* at 253 ("But in the absence of some contrary indication, there are strong reasons to conclude that the parties did not intend their arbitration duties to terminate automatically with the contract.").

**\*5** Despite this Court's concerns with applying the *Litton* standard by analogy to general commercial agreements, this Court finds the logic expressed in *Litton* applicable to general contracts. *See Litton,* 501 U.S. at 208 (noting that the exceptions as to when an arbitration agreement survives "is similar to the rule of contract interpretation which might apply to arbitration provisions of other commercial contracts"); *see also Selas Fluid Processing Corp. v. Ultra-Cast, Inc.,* 2004 WL 1622034, at *4-5 (E.D.Pa. July 20, 2004) (applying *Litton* to purchase orders entered into between commercial parties). This logic acknowledges that a terminated or expired contract "has by its own terms released all its parties from their respected contractual obligations, except obligations already fixed under the contract but as yet unsatisfied." *Litton,* 501 U.S. at 206. Consequently, this Court will apply the *Litton* standard to the instant agreement, reading *Litton* as an exhaustive mapping of the situations in which parties can be made to arbitrate pursuant to an arbitration clause in an expired contract. [FN5]

> FN5. Plaintiffs ask this Court to apply the *Litton* standard. (Pl. Rsp. To Mot. To Dismiss, at 6-7).

2. The arbitration clause in the terminated agreement survives with respect to Count I of the complaint, but not Counts II-VIII.

The parties agree that they entered into a valid agreement containing an arbitration clause. The parties also agree that the arbitration clause is quite broad, covering "all disputes" arising out the relationship between And 1 and defendant. (*See* Agreement). However, the parties differ as to whether the arbitration clause in the terminated agreement is still applicable to plaintiffs' claims. [FN6]

> FN6. Defendant claims that "And 1 concedes that a valid agreement to arbitrate does exist." (Def. Rpl. Br. at 2). However, plaintiffs claim the opposite, arguing that the termination of the agreement invalidates the arbitration clause, subject to the exceptions outlined in *Litton.* (Pl. Rsp. To Mot. To Dismiss, at 5).

a. The arbitration clause survives the termination of the agreement with respect to Count I of plaintiffs' complaint.

Count I alleges that defendant breached its obligations under the agreement by failing, *inter alia,* to maintain accurate books and records, to pay all sums and proceeds due, and to permit plaintiffs to conduct an audit of the financial books and records. (Compl. at ¶¶ 52-57). Plaintiffs consent to arbitrate Count I of the complaint, thereby admitting that the factual predicate for Count I arises under the contract and that the claim falls within the scope of the arbitration clause. (Pl. Rsp. To Def. Mot. To Dismiss, at 4).

b. The arbitration agreement does not survive the termination of the agreement with respect to Counts II-VIII of plaintiff's complaint.

In contrast to Count I, there is no factual support that plaintiff's intellectual property claims arose under the agreement, as defined by the *Litton* standard. *See, e.g., Nibbs v. Felix,* 726 F.2d 102, 104 (3d Cir.1984) (when parties to collective bargaining agreement agree to broad arbitration clause, duty to arbitrate survives termination of the agreement "if the dispute arises under the expired agreement"). First, these claims involve facts that occurred after the August 1, 2003 termination of the agreement and "following the breakdown in the business relationship between And 1 and defendant." (Compl. at ¶ 42). Indeed, the one specific allegation of the misuse of plaintiffs' intellectual property occurred in May 2004, more than one year after the expiration of the agreement. (Compl. at ¶ 43).

**\*6** Second, the claims do not seek to vindicate rights that accrued or vested under the agreement. Instead, as the agreement confirms, plaintiff owned the rights to the intellectual property before, during, and after the agreement. (*See* Agreement, at ¶ 10.2). Furthermore, defendant's limited right to distribute products bearing plaintiffs' intellectual property ended with the expiration of the agreement. Defendant does not argue that the agreement still exists. Nor does defendant argue that the contract permitted the continued use of plaintiffs' intellectual property throughout May 2004. Thus, defendant has not presented a link between defendant's alleged misuse of plaintiffs' intellectual property and the rights guaranteed by the agreement. *See, e.g., Int'l Union of Electronic, Electrical, Salaried, Machine and Furniture Workers v. Honeywell, Inc.,* 839 F.Supp. 340, 342 (E.D.Pa.1993) (no arbitration of grievance because the obligation to pay member of union negotiating committee for investigation of grievances did not accrue or vest under collective bargaining agreement).

Third, plaintiffs' intellectual property claims do not involve a right that survived the termination of the agreement. Unlike Count I, which involves in part the alleged breach of auditing obligations that expressly survived the termination of the agreement, the central issue of Counts II through VIII of the complaint is whether defendant was permitted to use, and in fact used, plaintiffs' intellectual property after the termination of the agreement. As previously discussed, this contractual right to use plaintiffs' intellectual property to distribute certain products terminated with the agreement. *See, e.g., Downs Carpet Co., Inc. v. Philadelphia Joint Board Amalgamated Clothing and Textile Workers Union,* 1993 WL 235927, at \*6 (E.D.Pa. June 29, 1993) (no arbitration of grievance because right to be discharged for just cause did not survive the expiration of the collective bargaining agreement).

This Court's analysis would be relatively straightforward if the language of the arbitration clause limited its temporal and substantive scope. However, as defendant points out, the parties have not explicitly limited the duration of the arbitration clause. (Def. Mot to Dismiss, at 9-11). Nor have the parties explicitly limited arbitrable matters to those arising under or out of the agreement. (*Id.*). Thus, according to defendant, all disputes between the parties, whether contractual or tort-related, continue to be subject to the arbitration clause in the terminated agreement. (*Id.*).

This Court finds that defendant's interpretation of the arbitration provision as covering any and all post-agreement disputes is untenable as a matter of law. <sup>FN7</sup> Defendant's interpretation attempts to collapse the validity and scope prongs of the arbitrability analysis, making the breadth of a clause (ie., its application to any dispute arising between the parties) dictate its validity (ie., its ability to survive the expiration of the agreement containing the clause). A broad arbitration clause, however, is not an arbitration clause that survives indefinitely. *See, e.g., Nat'l Railroad Passenger Corp. v. Boston and Maine Corp.,* 850 F.2d 756, 763 (D.C.1988) ("even in cases involving very broad arbitration clauses, the presumption in favor of arbitrating disputes over contract duration can be overcome by a clear showing that the parties intended for the underlying contract to expire before the relevant dispute arose"); *see also* 1 Domke on Commercial Arbitration § 12.2 (2004) (noting general rule that "when a dispute arises after the expiration of a contract, arbitration can no longer take place under the arbitration clause in the contract"). Once the underlying contract expires, an arbitration clause survives to cover only those exceptions outlined in *Litton,* unless the parties include language within the clause extending its duration. *See Becker Autoradio U.S.A., Inc. v. Becker Autoradiowork,* 585 F.2d 39, 44-46 (3d Cir.1978) (dispute relating to renewal of expired agreement arises out of agreement and is within scope of

arbitration clause); *see also* <u>*Ultra Cast, Inc.,* 2004 WL 1622034, at \*5</u> (arbitration clause did not terminate with termination of purchase orders because arbitration provision set statute of limitations as time limit). In other words, the breadth of an arbitration clause is only significant to the extent that the arbitration clause enjoys validity by surviving the expiration of the agreement. <u>FN8</u> To conclude otherwise would result in the perpetual arbitrability of all future claims between plaintiff and defendant, thereby undermining the parties' intent and eviscerating the *Litton* rationale that the purpose of an arbitration clause "is to enforce a contract rather than to transcend it." <u>*Litton,* 501 U.S. at 205</u>.

> <u>FN7.</u> The case law cited by defendant is inapplicable. The two major cases cited by defendant in support of its argument interpret broad arbitration clauses in existing agreements. *See* <u>*Cara's Notions, Inc. v. Hallmark Cards, Inc.,* 140 F.3d 566, 571 (4th Cir.1998)</u> (arbitration clause requiring arbitration of any claim arising out of "any aspects [sic] of the relationship" between litigants applies to claims associated with obligations under previous contract without arbitration clause); <u>*Cash Converters v. Burns,* 1999 WL 98345, at \*9-10 (N.D.Ill. Feb.19, 1999)</u> (arbitration clause in valid franchise agreement requiring arbitration of all claims arising "out of relationship" among litigants applies to claims arising out of separate contracts with no arbitration clause). Neither of these cases involved a litigant contesting the validity of an arbitration clause on the basis that it failed to survive the expiration of the agreement in which it was embedded.

> <u>FN8.</u> This analysis means that a broad arbitration clause in an expired contract only applies in limited instances to disputes that have no connection to the contract. For instance, an arbitration clause governing all disputes between parties would not apply to claims involving facts and occurrences that are unrelated to the contract and that arise after its expiration. Applying *Litton,* such a clause would not survive the expiration of the agreement because the dispute does not "involve facts and occurrences that arose before expiration." <u>*Litton,* 501 U.S. at 209</u>. This analysis remains faithful to the contractual nature of an arbitration clause.

## B. Conclusion

**\*7** For the following reasons, defendant's motion to dismiss the complaint is DENIED. Defendant's motion to compel arbitration is GRANTED as to Count I of the complaint and DENIED as to Counts II-VIII of the complaint. <u>FN9</u>

> <u>FN9.</u> Neither party has requested a stay of the non-arbitrable claims pursuant to § 3 of the FAA.

## *ORDER*

AND NOW, this *10th* day of November 2004, upon consideration of Defendant's Motion to Dismiss and Compel Arbitration (Doc. No. 4), filed on September 20, 2004, Plaintiffs' Response to Defendant's Motion to Dismiss and Compel Arbitration (Doc. No. 8), and Defendant's Reply Memorandum of Law in Support of its Motion to Dismiss and Compel Arbitration (Doc. No. 12), filed on October 25, 2004, it is hereby ORDERED as follows:
1. Defendant's Motion to Dismiss is DENIED.
2. Defendant's Motion to Compel Arbitration is GRANTED as to Count I of the complaint and DENIED as to Counts II-VIII of the complaint.

E.D.Pa.,2004.
The Basketball Marketing Co., Inc. v. Urbanworks Entertainment
Not Reported in F.Supp.2d, 2004 WL 2590506 (E.D.Pa.)

Briefs and Other Related Documents (Back to top)

• 2004 WL 2696310 (Trial Pleading) Complaint (Jul. 02, 2004)
• 2:04cv03179 (Docket) (Jul. 02, 2004)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.